IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KARI SIMONSEN, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT and |
| vs. | ) | DEMAND FOR JURY TRIAL |
| | ) | in LINCOLN, NEBRASKA |
| THURSTON COUNTY SCHOOL | ) | |
| DISTRICT 87-0013 (d/b/a WALTHILL | ) | |
| PUBLIC SCHOOLS); and KIRK | ) | |
| AHRENDS, in his individual and official | ) | |
| capacities; | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, by and through her attorney, and for her cause of action against the Defendants states as follows:

1.      This is an action seeking redress for the violations of constitutionally and statutorily protected rights guaranteed the Plaintiff by the Americans with Disabilities Amendments Act; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701; Title VII of the Civil Rights, as amended, 42 U.S.C. §1981, brought under 42 U.S. §1983, the First Amendment of the United States Constitution, as raised through 42 U.S.C. § 1983, and the Nebraska Fair Employment Practices Act.

2.      Plaintiff is a resident of Nebraska.

3.      Defendant Thurston County School District 87-0013 (d/b/a Walthill Public Schools) (hereinafter WPS) is a political subdivision operating within the State of Nebraska and is a recipient of State and Federal funds.

4.      Upon further information and belief, nearly 96% of students who attend WPS are Native American and a significant majority of WPS students have a disability as

1

that term is defined by the ADAAA, the Rehabilitation Act, and the Nebraska Fair Employment Practices Act.

5.      Upon information and belief and at all times alleged, Defendant Kirk Ahrends was the Superintendent of WPS.  At all times alleged herein, Defendant Ahrends was acting in his official and individual capacities and within the scope and course of his employment with WPS.

6.      At all times alleged herein, the customs, policies, practices, "edicts and acts" and/or the failure to train, supervisor or monitor the employees, officers, administrators, and/or elected officials of Defendant WPS resulted in the constitutional and statutory deprivation of Plaintiff's rights and the rights of disabled Native American students who have attended WPS since the 2017-2018 school year (and likely prior to the 2017-2018 school year).

7.      This Court has original jurisdiction over the federal statutory and constitutional claims and concurrent jurisdiction of the claims arising under Nebraska law.

8.      Plaintiff received her bachelor's degree in elementary education from Midland Lutheran College and thereafter obtained her graduate degree in Education Administration from Concordia University.   At all times alleged, Plaintiff has held a Nebraska teaching certificate.

9.      Plaintiff commenced her employment with Defendant WPS in 2005 as a general education teacher.  The most recent position held by Plaintiff before her unlawful suspension was teaching 3rd grade.   Plaintiff also served as the union representative for WPS teachers prior to and at the time of her August 2021 suspension.

Plaintiff's union representative position required her to advocate on behalf of WPS teachers and participate in negotiations with WPS teachers, administrators and the school board regarding the terms and conditions of employment for teachers employed by WPS.

10.     It is undisputed that Plaintiff's work performance was satisfactory.

11.     At all times alleged, Plaintiff was and is qualified for the position she holds at WPS.

12.     At all times alleged, a substantial number of WPS's Native American students were disabled and required an individualized education program (IEP). An IEP is a written plan for providing educational services to disabled students. Federal and state law requires strict compliance with the IEP so disabled students received legally mandated educational services.

13.     Upon information and belief, WPS received additional (and specially earmarked) taxpayer funds to provide the legally required educational services to its disabled students.

14.     As will be fully described in the following paragraphs, Plaintiff repeatedly reported and opposed non-compliance with student IEPs for over a decade to a plethora of entities and individuals, including, but not limited to, WPS administrators, the district's director of special education, the Nebraska Department of Education, the district's school board, third parties placed and working at WPS, and numerous employees of the school district.

15.     Plaintiff was closely associated with minority students with disabilities who attended WPS.

16.     In August 2017, Kerri Mohnsen, a speech pathologist who was employed by Educational Service Unit No. 1 (ESU 1), was placed at WPS to provide services to special education students. Within days of arriving at WPS, Ms. Mohnsen discovered that WPS was failing to provide statutorily mandated services and education to special education students, most of whom were Native American.

17.     Ms. Mohnsen made complaints to her employer and WPS about this illegal activity.

18.     In the fall of 2017, Plaintiff again reported to WPS administrators and others that disabled Native American students were not receiving all educational services mandated under law.

19.     After WPS and ESU No. 1 failed to take appropriate remedial action regarding the failure to deliver special education services to students, Mohnsen filed complaints with the Nebraska Department of Education (NE DOE) which detailed the statutory violations related to WPS's failure to provide mandated education and services to special education students, many of whom are Native American, and other related matters.  Mohnsen's complaints to the NE DOE, included, but were not limited to WPS's failure to provide appropriate services required by law to special needs students, allowing improperly licensed or credentialed staff to provide mandatory services to special needs students, failing to properly document and record services allegedly provided to special needs students, failing to create and/or abide by statutorily mandated Individual Education Plans (IEPs) or §504 plans for special needs students, failing to provide reasonable accommodation to special needs students, and misappropriation of state and

federal funds designated for services for special needs students and/or Native American students attending WPS.

20.     As part of its investigation into Ms. Mohnsen's complaints, the NE DOE interviewed Plaintiff in late Fall of 2017 or early Spring of 2018.  Plaintiff contract with WPS did not require her to participate in the NE DOE investigation.

21.     During her interview with the NE DOE, Plaintiff confirmed and corroborated the reported law violations related to WPS's failure to deliver mandatory educational services to disabled Native American students.  The matters on which the Plaintiff spoke undisputedly involved matters of public concern.

22.     Ms. Simonsen also described during her NE DOE interview the egregious harassment that Ms. Mohnsen suffered at the hands of WPS administrators and employees due to Ms. Mohnsen's engagement in numerous protected activities. Reporting unlawful retaliation and participating in a state investigation regarding illegal activities involve matters of public concern.

23.     On or about March 15, 2018, the NE DOE issued its investigatory report regarding the aforementioned complaints against WPS.  The NE DOE found numerous violations by WPS, including, but not limited to: (a) WPS failed to provide special education and related services to children with disabilities in accordance with the students' IEPs; (b) WPS failed to make the students' IEPs accessible to those professionals who needed to see the IEPs; (c) WPS failed to inform teachers and providers of their responsibilities related to the implementation of the students' IEPs; (d) WPS failed to include goals and a description of how student progress would be measured; (e ) WPS failed to routinely check the hearing aid(s) worn by student(s); (f)

WPS did not review the IEPs in the manner required by law; and (g ) WPS had accepted

state and federal special education funding but had failed to provide the mandatory

services to disabled students as required by law even though the state and federal funding

had been specifically earmarked for special education services.

24.     The NE DOE investigation also described numerous specific deficiencies

of WPS Superintendent, Edward Stansberry, including, but not limited to, his failure to

ensure compliance with state and federal special education laws and remissness in

delivering disabled students educational services to which they are legally entitled.

25.     As a result of the investigation, WPS was placed on probation and ordered

to comply with a multitude of other remedial actions by the NE DOE in an attempt to

cure the numerous deficiencies noted in the investigatory report.

26.     The NE DOE's interview of Plaintiff substantially contributed to the NE

DOE's investigatory findings and conclusions against WPS and Mr. Stansberry.

27.     Following the issuance of the NE DOE report, WPS Superintendent

Stansberry resigned his position effective prior to the commencement of the 2018-2019

school year.

28.     On or about April 19, 2019, the NE DOE filed a Petition against former

WPS Superintendent Stansberry (and his professional license) alleging numerous law

violations arising out of his alleged failure to provided legally mandated services to

disabled WPS students.

29.     Thereafter, Edward Stansberry's professional license was suspended for

one year by the Nebraska Department of Education.

30.     Defendant Ahrends was hired by WPS during the 2017-2018 school year and became WPS Superintendent in the summer of 2018 following Edward Stansberry's resignation.

31.     Upon information and belief, Defendant Ahrends has maintained a very close personal and professional relationship with Ed Stansberry throughout his employment with WPS.

32.     Upon information and belief, Defendant Ahrends frequently consults with Mr. Stansberry about matters related to WPS.  Defendant Ahrends relies heavily on Stanberry's advice in performing his superintendent duties at WPS.

33.     Plaintiff's colleague, Kerri Mohnsen, suffered egregious discrimination due to her close association with disabled Native American students and was retaliated after engaging in numerous protected activities.

34.     On June 20, 2019, on behalf of Kerri Mohnsen, the undersigned attorney filed a federal lawsuit against WPS, ESU No. 1, Edward Stansberry, former WPS Superintendent, and two individuals employed by ESU No. 1. (See Mohnsen v. ESU No. 1, WPS, Clark, Heimann, and Stansberry, U.S. Dist. Ct. for Dist. of Neb., Case 4:19-cv-3061).

35.     The undersigned attorney deposed Plaintiff in the Mohnsen v. ESU No. 1, et.al. litigation on December 2, 2020.   Plaintiff's contract with WPS did not require her to give deposition testimony in the Mohnsen lawsuit.

36.     After Plaintiff's deposition was scheduled, but before it was taken, Defendant Ahrends sought to intimidate and coerce Plaintiff's sworn deposition testimony by falsely telling Plaintiff that her testimony would determine whether WPS

had to remain on the 2018 NE DOE remedial/corrective action plan that was imposed on WPS due to the deficiencies reported to the state agency (which were substantially corroborated by Plaintiff).

37.     The plaintiff was so unnerved and upset about Defendant Ahrends's threatening and coercive words and behavior that she asked WPS's attorney in the Mohnsen litigation to speak to Ahrends on her behalf and specifically request that he stop harassing her.   Ahrends's harassment of Plaintiff did not end.

38.     Defendant Ahrends's threatening and intimidating pre-deposition interactions with Plaintiff did not sway her from testifying truthfully on December 2, 2020.

39.     During Plaintiff's December 2, 2020 deposition, she testified, in relevant part, as follows:  That throughout her years of employment with WPS that: (1) WPS routinely failed to deliver special education services to special education students, (2) WPS's Director of Education repeatedly (and falsely) stated that compliance with students' IEP minutes and plans were suggestions; not mandatory; (3) she had repeatedly reported to WPS administrators and others that special education students had been denied education required under their IEP plan and the law, (4) WPS administrators intimidated and sought to deter her from making complaints when and after she reported the IEP violations; (5) WPS failed to take action after she reported violations of IEP plans for seventeen (17) years, (6) even though her reports of IEP violations resulted in no action from the district, Plaintiff continued to report said violations on behalf of special education students; (7) WPS teachers, including but not limited to Becky Rogers, failed to deliver services and education required by law to special needs students; (8) the district

wholly stopped providing any type of special education services to special needs students a week or two before the school year was over; (9) Mohnsen did not have any problems at WPS prior to her reporting and/or opposing the district's failure to deliver special education services to special needs students; (10) after Mohnsen reported to district administrators that WPS was non-compliant with IEP plans and/or had failed to deliver all educational minutes required under the IEP, former WPS Superintendent Ed Stansberry unilaterally changed the students' IEP plans in violation of the law; (11) WPS administrators and staff became overtly hostile and aggressive towards Mohnsen after she reported the district's failure to deliver special education services; and (12) Simonsen reported to NE DOE investigators that after Mohnsen reported the IEP violations, some WPS administrators and staff "were terrible to her…they treated her like crap."  Her deposition testimony absolutely involved matters of public concern.

40.     It is undisputed that Plaintiff's testified to many matters involving public concern.

41.     And Plaintiff's deposition testimony detailed the egregious harassment of Mohnsen by WPS administrators and employees.  Such testimony also involved matters of public concern as they were not personal to Plaintiff, rather it detailed and corroborated WPS's illegal retaliation against a third-party.

42.     Throughout Defendant Ahrends's employment with WPS, he has engaged in a pattern of overtly hostile, dismissive, threatening, coercive, intimidating, and disapproving conduct directed at the Plaintiff due to her being a whistleblower, because she participated in protected activities related to the delivery of special education services

to disabled students and the illegal retaliation directed towards the plaintiff and a third party, and due to her close association with disabled Native American WPS students.

43.     As the teachers' union representative, Plaintiff regularly attended WPS School Board meetings and advocated on behalf of union members regarding matters which affected the terms and conditions of employment for union members who were employed as teachers at WPS.  During said meetings, Defendant Ahrends routinely discussed the Mohnsen lawsuit in a disgusted, hostile, and angry manner. Often times Defendant Ahrends joked about Mohnsen and her lawsuit to the WPS school board. During these repeated discussions, members of the WPS School Board stared at Plaintiff in a disapproving, threatening, and hostile manner.  Defendant Ahrends also routinely engaged in similar conduct when he attended WPS staff meetings.

44.     It was overwhelmingly apparent that Defendant Ahrends and the WPS School Board possessed great dislike of and contempt for Mohnsen, her lawsuit, persons who corroborated Mohnsen's allegations, and persons who engaged in similar protected activities, such as the Plaintiff.

45.     As noted above, Defendant Ahrends and Edward Stansberry have maintained a very close personal and professional relationship throughout Ahrends's tenure with WPS.   Just weeks before Plaintiff's unlawful suspension, Plaintiff witnessed Defendant Ahrends and Stansberry standing closely together for an extended period of time at a local event, talking, laughing, and staring at Plaintiff in a highly menacing, disapproving and intimidating manner. Plaintiff felt intimidated and threatened by Ahrends's and Stranberry's conduct.

46.     The Mohnsen v. ESU No. 1, et.al. matter was resolved out of court in mid-August, 2021.  A joint stipulation for dismissal was filed on August 31, 2021.  (See Doc. #83, Case No. 4:19-cv-3061, U.S. Dist. Ct.  for Dist. of Neb).

47.     On the exact day that the joint stipulation for dismissal was filed in the Mohnsen matter, Defendant Ahrends suspended Plaintiff from her employment with WPS for the entire 2021-2022 school year. Prior to her suspension, Plaintiff had entered into a written teaching contract with the district for the duration of the 2021-2022 school year.  Plaintiff's suspension was discriminatory and retaliatory.

48.     The August 31, 2021 written suspension letter authored by Defendant Ahrends to Plaintiff stated, in relevant part, "Based upon the nature of the charges, I believe it to be in your best interest and those of the school district that you be temporarily relieved of your duties…until a thorough investigation can be completed…."

49.  Defendant Ahrends's August 21, 2021 letter to Plaintiff continued: "During the period of administrative leave, you will not be able to participate in school district activities, and are not to return to the school, whether during working hours or after, unless prior arrangements have been made with me.  Your contacts during this period should be with or through me."

50.     Plaintiff's unlawful suspension has continued through the date of this filing even though the investigation was completed on April 11, 2022.

51.     Defendant Ahrends's August 31, 2021 letter further stated: "You are directed to immediately return any keys, electronic devices, or other school property that you have in your possession…."

52.     During the August 31, 2021 suspension meeting with Plaintiff, Defendant Ahrends told Plaintiff that her teaching contract would not be renewed for the 2022-2023 school year.

53.     Defendants' unlawful conduct deprived and/or substantially interfered with Plaintiff's constitutional right to associate with and advocate on behalf of union members and associate with students, employees, union members, and other persons present at WPS since August 2021.  Defendants' unlawful ban, which prohibited Plaintiff from participating in district activities and barred her from school property, was motivated by discriminatory and retaliatory reasons.

54.     A few days before her unlawful suspension, Plaintiff told WPS Principal, Seth Sackmann, and Defendant Ahrends that she would continue to report violations of law and/or failure to deliver special education services to disabled students if she witnessed the same. Plaintiff's contract with WPS did not require her to make such reports.

55.     Additionally, in the days preceding her unlawful suspension, Plaintiff and two WPS teachers were discussing allegations that a WPS teacher, Becky Rogers, was failing to provide mandated services to special education students and had failed to comply with the disabled students' IEPs.  The 2018 NE DOE report noted multiple deficiencies by WPS teacher Becky Rogers in failing to deliver mandatory special education services to disabled students.  Plaintiff told her peers that she would speak out and/or continue to report the district's failure to deliver special education services to disabled students.    Plaintiff's contract with WPS did not require her to make such reports.

56.     During the suspension meeting, Defendant Ahrends accused Plaintiff of attempting to terminate another employee.

57.     Defendant Ahrends's allegations are absurd and clearly a pretext for discrimination and retaliation. Plaintiff, a contracted WPS teacher, has no authority to fire another employee as hiring and firing decisions are at the sole discretion of WPS administrators and/or the school board.  Plaintiff is neither a WPS administrator nor board member.

58.     Plaintiff adamantly denies engaging in any improper conduct.

59.     The unlawful suspension of Plaintiff constitutes an unlawful employment action.  To be "adverse" the action need not always involve termination or even a decrease in benefits or pay. *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015). "[l]esser actions than demotion, suspension and termination can be adverse if their cumulative effect cause an employee to suffer 'serious employment consequence' that adversely affect or undermine his position."  *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 948 (8th Cir. 2007) (citing *Kim v. Nash Finch Co*, 123 F.3d 1046, 1060 (8th Cir. 1997)). "Changes in employment duties or conditions that cause material disadvantage to the employee constitute adverse employment actions, but tangential changes do not." *Shockency*, 493 F.3d at 948.

60.     In a November 22, 2021 letter sent by Plaintiff to Defendant Ahrends and WPS School Board member, James Randol, she wrote many things, including, but not limited to, the district's failure to provide special education services to disabled students, her interview with and the NE DOE 2018 findings (that the district failed to deliver mandatory services to special education students), the unlawful retaliation against

Mohnsen by the district after she engaged in protected activities, and the Defendants'
unlawful treatment of her.   The contents of her November 22, 2021 letter contained
matters of public concern.   Plaintiff's contract with WPS did not require her to write or
send the November 22, 2021 letter.

61.     In late November or early December 2021, Plaintiff filed six written
complaints with the NE DOE against Defendant Ahrends and four other administrators
and employees of WPS.   The complaints alleged, in part, continuing violations by district
employees in failing to provide mandatory educational services to special needs students
and the unlawful retaliation against third parties and addressed other matters of public
concern.   The complaints also described the Defendants' continuing pattern of
discrimination and retaliation against the Plaintiff.   Plaintiff's teaching contract with
WPS did not require her to write or submit the NE DOE complaints.

62.     In December 2021, Plaintiff's attorney learned that WPS hired its long-
time attorney, Steve Williams, to investigate Defendants' illegal treatment of Plaintiff.
Upon information and belief, WPS has likely paid Mr. Williams's law firm hundreds of
thousands of dollars to defend/represent the district in various lawsuits and legal matters
over the years.   It is incomprehensible that a lawyer could conduct a fair and unbiased
investigation of their own client; particularly a client who has paid in the past and was
currently paying the firm for legal representation.   The conflict was glaringly apparent to
all except Mr. Williams and the Defendants.

63.     This is not the first time that Mr. Williams has sought to investigate his
own client's alleged illegal conduct. After Mohnsen reported WPS's illegal conduct to
the school district, Mr. Williams (who was representing WPS at the time and had

previously represented WPS), allegedly conducted 'an investigation' into his client's alleged illegal behavior.

64.    Not surprisingly, when he was deposed in the <u>Mohnsen</u> litigation, Mr. Williams testified that his investigation revealed no misconduct by his client, WPS.

65.    When the undersigned attorney learned that Mr. Williams again sought to investigate his client regarding Simonsen's serious allegations of illegal activity by his client (WPS), she alerted Mr. Williams of his firm's alleged potential conflicts.  Due to the objections raised, Mr. Williams agreed to hire another person to conduct the investigation into Plaintiff's allegations.

66.    On or about February 15, 2022, Plaintiff participated in an investigation regarding Defendants' illegal actions.  This interview, and the information provided to the investigator, Chad Meisgeier, involved matters of public concern regarding WPS's denial of and/or failure to deliver education to its special education students (mandated by state and federal law), the illegal treatment of Mohnsen by WPS, and some matters personal to Plaintiff, including but not limited to discrimination and retaliation by the Defendants.  Plaintiff's teaching contract with WPS did not require her to participate in this investigation.

67.    During the course of the investigation, Plaintiff's counsel repeatedly requested that Mr. Meisgeier obtain from Mr. Williams highly probative, material and relevant documents in order to conduct a thorough investigation.

68.    Rather than being an independent investigator, Meisgeier failed to obtain the highly relevant requested documents as "WPS attorney said they were not relevant."

69.     A truly independent and competent investigator would have required WPS to produce the documents central to a full and fair investigation rather than relying on the defense attorney's statement that the documents were not relevant.

70.     During the alleged investigation, Plaintiff described the district's failure to deliver special education services to special needs students, the district's violations of the rights of special education students, the district's unlawful actions towards a third-party, and the illegal conduct to which she had been subjected to by Defendants.  These matters upon which the Plaintiff spoke included matters of public concern.

71.     Meisgeier's investigation was completed in April 2022.

72.     Plaintiff has not been reinstated to the classroom even though Defendant Ahrends's letter stated that the suspension would continue until the investigation was completed.

73.     On February 7, 2022, Plaintiff filed additional charges of discrimination and retaliation against WPS with the NEOC and EEOC.  The administrative charges allege that WPS violated the Nebraska Fair Employment Practices Act, the ADA Amendments Act of 2008, and Title VII of the Civil Rights Act.   These charges included matters of public concern such as the denial of special education services to disabled students, and retaliation against a third-party after she engaged in protected activities. The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

74.     On or about May 2, 2022, Plaintiff filed amended charges against WPS with the NEOC and EEOC which detailed the district's continuing acts of discrimination and retaliation in violation of state and federal law. These charges included matters of

public concern such as the denial of special education services to disabled students, and retaliation against a third-party after she engaged in protected activities. The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

75.     On or about May 11, 2022, Plaintiff filed additional amended charges of discrimination and retaliation against WPS with the NEOC and EEOC. The amended charges alleged that WPS violated the Nebraska Fair Employment Practices Act, the ADA Amendments Act of 2008, and Title VII of the Civil Rights Act.   These charges included matters of public concern such as denial of special education services to disabled students, and retaliation against a third-party after she engaged in protected activities.  The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

76.     On or about April 25, 2022, Plaintiff accepted a teaching contract with WPS for the 2022-2023 school year.  The contract provided, in relevant part, that she "agrees to devote full time, during days of school to his/her position in all respects, to diligently and faithfully perform the assigned duties as teacher to the best of his/her professional ability."

77.     Even though the 2022-2023 contract provided that Plaintiff commence work on August 8, 2022, Defendant has refused to recall Plaintiff from suspension. Plaintiff remained on suspension for the entire 2022-2023 school year and the ban which prohibits Plaintiff from participating in district activities and from entering onto district property remains in effect as of the date of this filing.

78.     Plaintiff filed a federal lawsuit against the Defendants on August 25, 2022 which alleged violations of the Americans with Disabilities Amendments Act, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701; Title VII of the Civil Rights Act, as amended, 42 U.S.C. §1981, the First Amendment of the United States Constitution, as raised through 42 U.S.C. §1983, and the Nebraska Fair Employment Practices Act.  (See U.S. District Court for the District of NE, Case No. 4:22-cv-03179, Doc #1)

79.     On or about January 31, 2023, Plaintiff filed administrative actions with the NEOC and EEOC alleging continuing acts of discrimination and retaliation by Defendants in violation of the ADAAA, Title VII, and the Nebraska Fair Employment Practices Act. These charges included matters of public concern such as denial of special education services to disabled students, and retaliation against a third-party after she engaged in protected activities.  The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

80.     On or about May 1, 2023, the EEOC issued a determination and notice of rights.

81.     Plaintiff timely filed a first amended complaint in federal court against Defendants on June 2, 2023.  The first amended complaint alleges violations of the state and federal laws referenced in ¶79.  (See U.S. District Court for the District of NE, Case No. 4:22-cv-03179, Doc #23)

82.     At the time the first amended complaint was filed as noted in ¶81, the NEOC charge referenced in paragraph 79 was pending before that state agency.

83.    Throughout the 2022-2023 school year, Plaintiff sent emails to Defendant Ahrends requesting information about the date that she should report to work in the classroom.  Defendant Ahrends failed to respond to Plaintiff's inquiries.

84.    On April 10, 2023, Plaintiff entered into a teaching contract with WPS for the 2023-2024 school year.   The contract provides in relevant part that the teacher…" agrees to devote full time, during days of school to his/her position in all respects, to diligently and faithfully perform the assigned duties as teacher to the best of his/her professional ability."

85.   Pursuant to the 2023-2024 contract, Plaintiff should have commenced her teaching duties on or about August 7, 2023.

86.   Pursuant to an April 2023 email exchanged between counsel for the parties, it appears that WPS intended to maintain the 'status quo' and continue Plaintiff's suspension for the foreseeable future.  WPS's unlawful conduct may last for decades.

87.   As threatened by defense counsel in April 2023, Defendants have refused to return Plaintiff to the classroom to teach students since the 2023-2024 school year commenced in August 2023.

88.    As of the date of this filing, the suspension and ban precluding Plaintiff from participating in district activities and entering onto school property remains in effect. The suspension and ban have substantially interfered with Simonsen's ability to associate with and advocate for students, parents, employees, union members, and others present at and/or associated with the school district.

89.     The suspension and ban have prevented Simonsen, who serves as the WPS teacher union representative, from engaging in union activities and/or advocating on behalf of union members.

90.     Due to the continuing violations noted in paragraphs ¶¶84-89 above, on or about September 28, 2023, Plaintiff filed additional NEOC and EEOC charges of discrimination and retaliation against WPS alleging violations of the Nebraska Fair Employment Practices Act, the ADAAA, and Title VII of the Civil Rights Act.

91.     On November 15, 2023, the U.S. Department of Justice, Civil Rights Division, issued Ms. Simonsen a Notice of Right to Sue within 90 days regarding the administrative charges that she filed with the EEOC on or about September 28, 2023. The NEOC charges filed in September 2023 are currently pending before that agency. Plaintiff has fulfilled the administrative prerequisites prior to filing this timely action.

92.     Upon information and belief, Defendants falsely told staff that Plaintiff was suspended as she had threatened to kill Ms. Rogers. Ms. Rogers is one of the WPS employees who denied special education services to disabled students per the NE DOE report.   Ms. Rogers is still employed by WPS even though she violated state and federal laws by depriving disabled students the educational services to which they are legally entitled.

93.     Defendants' statements to staff are false and defamatory.  Not only have the Defendants unlawfully suspended Plaintiff and refused to reinstate her (contrary to her numerous teaching contracts and the August 31, 2021 suspension notice) and banned her from school activities and school property, Defendants are making up vicious lies

about her which has damaged her reputation in the teaching community, and the community at large.

94. The numerous matters upon which Plaintiff spoke and wrote (as set forth herein) involved matters of public concern.   Defendants punished Plaintiff for her speech in a manner that would chill a person of ordinary firmness from continuing to engage in the activity in which Plaintiff engaged.   Defendants' conduct has also infringed upon Plaintiff's constitutional right to associate with persons, students, employees, union members, and others present at WPS and has precluded her engagement in union activities on behalf of WPS teachers since the August 31, 2021 suspension.

95.   Plaintiff's statutory and constitutional rights that were violated by Defendants were clearly established at the time of the deprivation.

96.   As noted in the preceding paragraphs, after Plaintiff engaged in one or more protected activities and spoke out on matters of public concern, Defendants substantially, egregiously, and willfully discriminated and retaliated against her by materially altering Plaintiff's job duties and responsibilities as well as her working conditions and banned her from district activities and school property.  Defendants' unlawful action also prohibited Plaintiff from engaging in union representative duties on behalf of herself and other members of the teachers' union at WPS.

97.   Defendants also discriminated and retaliated against Plaintiff due to her close association with disabled students and Native American students.

98.   At all times alleged herein, Defendant Ahrends and other WPS employees, agents, representatives, administrators, and/or officials were acting in the scope and course of their employment and/or office with the political subdivisions noted herein and

were acting in concert with each other to deprive Ms. Simonsen of her constitutional and/or statutory rights.

99.     As a result of Defendants' actions, Plaintiff has suffered injuries, including, but not limited to, past, present, and future, mental suffering, humiliation, inconvenience, emotional and mental anguish and distress, lost wages and the value of job-related benefits, damage to reputation, and other special and general damages as allowed under law.

100.    At all times relevant, Defendant Ahrends acted recklessly or in willful disregard of the Plaintiffs' statutory and constitutional rights. Punitive damages against the individually named defendant is appropriate.

COUNT I

Plaintiff incorporates paragraphs 1 through 100 as if fully set forth herein.

101.    Defendant Ahrends violated Plaintiff's right to free speech in contradiction of the Constitution of the United States of America (1st Amendment) as raised through 42 U.S.C. § 1983.

102.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant Ahrends's unlawful conduct.

103.   Punitive damages against Defendant Ahrends are appropriate given his willful and/or reckless disregard of the Plaintiff's constitutionally and statutorily protected rights.

COUNT II

Plaintiff incorporates paragraphs 1 through 103as if fully set forth herein.

104.    Defendant Ahrends violated Plaintiff's right to engage in union activities and advocate on behalf of union members, and associate with students and other persons present at WPS since August 2021 in contradiction of the First Amendment of the Constitution of the United States of America as raised through 42 U.S.C. § 1983.

105.   Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant Ahrends's unlawful conduct.

106.    Punitive damages against Defendant Ahrends are appropriate given his willful and/or reckless disregard of the Plaintiff's constitutionally and statutorily protected rights.

COUNT III

Plaintiff incorporates paragraphs 1 through 106 as if fully set forth herein.

107.    Defendant WPS retaliated against Plaintiff after she engaged in the protected activities noted herein in violation of the Americans with Disabilities Amendments Act, the Rehabilitation Act of 1973, and the Nebraska Fair Employment Practices Act.

108.   Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

COUNT IV

Plaintiff incorporates paragraphs 1 through 108 as if fully set forth herein.

109.    Defendant WPS discriminated against the Plaintiff due to her close association with Native American students in violation of Title VII of the Civil Rights

Act, as amended, 42 U.S.C. §1981, as raised through 42 U.S.C. Section 1983, and the Nebraska Fair Employment Practices Act.

110.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

## COUNT V

Plaintiff incorporates paragraphs 1 through 110 as if fully set forth herein.

111.    Defendant WPS retaliated against the Plaintiff due to the protected activities in which she engaged on behalf of the Native American students and/or due to her close association with said students.   Said conduct violates Title VII of the Civil Rights Act, as amended, 42 U.S.C. §1981, as raised through 42 U.S.C. Section 1983, and the Nebraska Fair Employment Practices Act.

112.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

## COUNT VI

Plaintiff incorporates paragraphs 1 through 112 as if fully set forth herein.

113.    Defendant Ahrends discriminated and retaliated against Plaintiff due to the protected activities in which she engaged on behalf of Native Americans students and/or due to her close association with said students.  Said conduct violates 42 U.S.C. §1981 as raised through 42 U.S.C. Section 1983.

114.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendants' unlawful conduct.

115.    Punitive damages against Defendant Ahrends are appropriate given his willful and/or reckless disregard of the Plaintiff's constitutionally and statutorily protected rights.

COUNT VII

Plaintiff incorporates paragraphs 1 through 115 as if fully set forth herein.

116.    Defendant WPS retaliated against Plaintiff after she engaged in the protected activities noted herein in violation of the Nebraska Fair Employment Practices Act.

117.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

WHEREFORE, Plaintiff respectfully requests that this Court assume jurisdiction herein as to all counts alleged herein and grant the following relief:

a.      Declare Defendants' conduct to be violative of the Plaintiff's rights under the appropriate state or federal law(s) and/or U.S. Constitution;

b.      Award Plaintiff past, present, and future general and special damages in amount to be determined by a jury of her peers and order that Plaintiff be reinstated to her teaching duties;

c.      Award Plaintiff punitive damages against the individually named defendant;

d.      Enjoin Defendants from engaging in any further illegal actions against the Plaintiff;

e.      Award Plaintiff pre-judgment interest on lost wages and value of lost job-related benefits and on compensatory damages.

f.      Award Plaintiff monetary damages as a tax set off for any damages

awarded;

g.      Award Plaintiff taxable and non-taxable costs and reasonable attorney's

fees and such other and further relief as the Court deems just and reasonable and

appropriate to correct the wrong done to the Plaintiffs.


BY:    s/Kathleen M. Neary_____
       Bar Number:  NSBA 20212
       Attorney for Plaintiff
       POWERS LAW
       411 South 13th Street, Suite 300
       Lincoln, NE  68508
       Telephone: (402) 474-8000
       Fax: (402) 474 5006
       Email: kathleen@vpowerslaw.com


DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury in Lincoln, Nebraska.

s/Kathleen M Neary_____
Kathleen M. Neary    NSBA 20212


CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of February 2024 I electronically file the
foregoing with the Clerk of the Court using the CM/ECF system which sent notification
of such filing to all counsel of record.

s/Kathleen M. Neary_____
Kathleen M. Neary